## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Wendi Carlson,                                    Civil No. 06-3289 (ADM/SRN)

        Plaintiff,

        v.                                   **REPORT AND RECOMMENDATION**

Michael J. Astrue,
Commissioner of Social Security,

        Defendant.

---

    Lionel H. Peabody, Esq., Peabody Law Office, 301 West 1st Street, Suite 600, Duluth, MN 55802, on behalf of Plaintiff.

    Lonnie F. Bryan, Esq., Office of the United States Attorney, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    Pursuant to 42 U.S.C. § 405(g), Plaintiff Wendi Carlson seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who determined that Plaintiff was not statutorily disabled and therefore not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. The parties have submitted cross motions for summary judgment. (Doc. Nos. 8, 12.) The motions have been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1. For the reasons set forth below, this Court recommends that Plaintiff's Motion for Summary Judgment (Doc. No. 8) be denied and Defendant's Motion for Summary Judgment (Doc. No. 12) be granted.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed an Application for Disability Insurance Benefits on March 11, 2004, alleging

disability as of March 4, 2004, due to carpal tunnel syndrome in both wrists, and chronic pain,

numbness, weakness, tendinitis, and arthritis in both hands.  (Tr. at 14, 26, 53-55, 75.)  Her application

was denied initially and upon reconsideration.  (Id. at 25-28.)  Plaintiff appealed and sought a hearing

before an Administrative Law Judge (ALJ), which was held on November 3, 2005, before ALJ Larry

Meuwissen.  (Id. at 383.)  The ALJ denied Plaintiff's claim on January 17, 2006, and Plaintiff filed a

request for review with the Appeals Council, which affirmed the ALJ's decision.  (Id. at 6, 22.)

Plaintiff filed her Complaint in federal court on August 10, 2006.  (Doc. No. 1.)  She asks the

Court to reverse the ALJ on the following grounds: (1) the ALJ failed to consider Plaintiff's age; (2) the

ALJ did not give controlling weight to work restrictions imposed by Plaintiff's treating physician; (3) the

ALJ did not determine the extent to which Plaintiff's impairments eroded the full range of work at the

light exertional level; (4) the ALJ improperly disregarded the testimony of the Vocational Expert (VE);

and (5) the VE's testimony did not establish that work exists in significant numbers within Plaintiff's

residual functional capacity (RFC).  Defendant disagrees with all of Plaintiff's contentions and urges the

Court to find that the ALJ's findings are supported by substantial evidence in the record.

### B.    Factual Background

Plaintiff was fifty-two years old at the time of the ALJ's decision and was therefore a person

considered to be closely approaching advanced age.  (Tr. at 20; see 20 C.F.R. § 404.1563.)  Prior to

her alleged onset of disability date, Plaintiff worked at the United States Postal Service (USPS) as a

data conversion clerk.  (Tr. at 75-76.)  The USPS continuously restructured Plaintiff's position to accommodate her medical condition, but at the end of her employment, Plaintiff hardly performed any work at all.  (Id. at 75.)  Plaintiff stopped working at USPS on March 4, 2004.  (Id. at 156.) According to Plaintiff, USPS was investigating her for misrepresenting a medical condition in order to obtain benefits, and she quit rather than face termination.  (Id. at 392.)

Plaintiff lives alone and is able to drive, shop, cook, and do her own laundry, with some assistance from friends.  (Id. at 389, 397.)  She graduated from high school, has two years of college education, and would like to work.  (Id. at 390, 398.)  She enjoys reading and reads often.  (Id. at 397.)  Plaintiff can walk four or five miles at a time and has no problems standing.  (Id. at 394-95.) She can lift about ten pounds.  (Id. at 395.)  However, Plaintiff's hands fall asleep if she sits in one position for too long, and she can type for only fifteen minutes at a time.  (Id. at 395, 404.)

Plaintiff most recently worked part-time, twenty-five to thirty hours a week, as an office manager for Northern States Basement.  (Id. at 390-91.)  She answered telephones, filed, scheduled appointments, and maintained the appointment books for sales representatives and installation workers. (Id. at 390.)  Plaintiff stopped working at Northern States Basement because one of the owners thought that if business increased, Plaintiff would not be able to keep up with the computer work.  (Id. at 390, 393.)

### C.      Medical Evidence in the Record

Plaintiff has a long history of carpal tunnel syndrome and related symptoms, for which she first sought treatment in 1997.  (Id. at 194, 204.)  In November 1997, Plaintiff underwent an endoscopic carpal tunnel syndrome release bilaterally.  (Id. at 204.)  Nevertheless, Plaintiff continued to have

problems with her hands and wrists.

On November 30, 1999, Plaintiff underwent an independent medical evaluation (IME) with an orthopedic surgeon, Dr. Steven Bardolph.  (Id. at 354.)  Dr. Bardolph concluded that Plaintiff could perform light duty work for eight hours a day as long as she was restricted from repetitive work.  (Id. at 358.)  Dr. Bardolph felt that Plaintiff's complaints of pain were not supported by the objective medical evidence.  (Id. at 358.)

On May 31, 2001, Plaintiff saw Dr. Matthew J. Eckman, who became her primary treating physician, for an evaluation of her continued wrist and hand problems.  (Id. at 204.)  Dr. Eckman's physical examination of Plaintiff revealed full wrist flexion and extension, localized tenderness in both wrists, no swelling, and full strength, but some guarding during testing.  (Id. at 206.)  Dr. Eckman's impression was that Plaintiff suffered from a bilateral wrist strain with a propensity toward tendinitis related to overuse.  (Id. at 207.)  Plaintiff was working part-time at USPS, and Dr. Eckman recommended that she continue to work twenty hours a week.  (Id.)  He instructed Plaintiff to avoid heavy and repetitive use of her hands, such as frequent typing, writing, and pounding.  (Id.)

Plaintiff saw Dr. Eckman again on August 16, 2001.  (Id.)  Plaintiff reported aching, swelling, and numbness in her wrists, fingers, and hands.  (Id.)  Dr. Eckman reviewed magnetic resonance imaging (MRI) results and concluded that Plaintiff's median nerve in both wrists had an elliptical configuration consistent with scarring.  (Id.)  There were no other abnormalities.  (Id.)  Upon physical examination of Plaintiff, Dr. Eckman noted no limitations on flexion or extension with her wrists or fingers.  (Id.)  Dr. Eckman found no inflammation, pain, or tender joints and only incidental sensitivity with carpal tunnel pressure.  (Id.)  His impression was chronic wrist strain exacerbated with overuse

and repetitive stress, and prior carpal tunnel syndrome with some scarring.  (Id.)

On September 2, 2001, Plaintiff went to the emergency room at St. Mary's Medical Center because she could not lift her wrist.  (Id. at 194.)  Dr. Juhn Han diagnosed Plaintiff with a compression radial nerve palsy.  (Id. at 195.)  The condition caused Plaintiff to miss about three weeks of work.  (Id. at 196.)

Plaintiff next saw Dr. Eckman on November 13, 2001 for her wrist and hand ailments.  (Id.)  Dr. Eckman recorded Plaintiff's complaints of pain in both wrists, numbness in certain digits, and a burning sensation in her wrists and hands.  (Id.)  Plaintiff reported to Dr. Eckman that she could type for ten minutes at a time and could write to pay her bills.  (Id. at 197.)  Plaintiff said she wore splints while driving and most of the time at work.  (Id.)  Plaintiff also said she was limited in her ability to vacuum, scrub floors, iron, mow the lawn, and fold clothes.  (Id.)  Dr. Eckman wrote that Plaintiff was taking propoxyphene for pain and trazedone for sleeplessness caused by discomfort in her hands.  (Id. at 105, 197.)  Upon examination, Dr. Eckman noted that Plaintiff had a full range of motion in her wrists and hands with no inflammation.  (Id. at 197.)  Muscle testing on her wrist and hands was in the low-normal range.  (Id.)  Dr. Eckman concluded that Plaintiff had residual carpal tunnel syndrome with some nerve scarring, and wrist strain and tendinitis when aggravated by overuse.  (Id. at 198.)  Dr. Eckman thought that Plaintiff should seek other employment, which could accommodate her restrictions, and noted that her restrictions continued to be the same as recorded on May 31, 2001. (Id.)

Dr. Eckman wrote a letter to the Office of Worker's Compensation on November 17, 2001, in connection with Plaintiff's worker's compensation claim.  (Id. at 283.)  He noted that it was reasonable

to conclude that Plaintiff had reached maximum medical improvement.  (Id. at 283-84.)  He noted that Plaintiff could not tolerate repetitive use of her wrist and hands, depending on the activity.  (Id. at 284.)  He recommended that Plaintiff continue working part-time in the repackaging area of USPS and be permitted a fifteen minute break every hour.  (Id.)

On March 14, 2002, Plaintiff returned to Dr. Eckman to review her work restrictions.  (Id. at 172.)  Dr. Eckman remarked that Plaintiff was repairing damaged mail for forty-five minutes an hour, four hours a day, five days a week.  (Id.)  Dr. Eckman thought that Plaintiff could increase her hours with work that required less wrist and hand stress.  (Id.)  Dr. Eckman completed a Department of Labor form on the same day, on which he reiterated this information and also concluded that Plaintiff was limited to pushing and pulling twenty pounds and lifting ten pounds.  (Id. at 174.)

Plaintiff did not visit Dr. Eckman after March 14, 2002.  (Id. at 178.)  However, Plaintiff called Dr. Eckman on October 3, 2002, to report that she was working regularly at USPS but that her hands were bothering her again.  (Id.)  Dr. Eckman recommended that Plaintiff try outpatient hand therapy three times a week.  (Id.)  Plaintiff subsequently went to eleven therapy sessions.  (Id. at 268.)

On August 26, 2002, Dr. Clinton Moen conducted an IME of Plaintiff.  (Id. at 360.)  Dr. Moen concluded that Plaintiff suffered from chronic tendinitis but that most of Plaintiff's subjective complaints were not supported by medical data.  (Id. at 363.)  He recommended that Plaintiff be restricted in her work to lifting no more than ten pounds and to performing repetitive motions no more than four hours a day.  (Id. at 364.)

On February 27, 2004, Dr. Eckman wrote a letter to St. Mary's/Duluth Clinic Health System.  (Id. at 181.)  He stated that Plaintiff could do occasional typing and regular telephone answering,

6

message taking, and other light clerical duties.  (Id.)  He stressed that only heavy and repetitive activities would exacerbate her symptoms.  (Id.)

In May 2004, Dr. Franklin Johnson examined Plaintiff at the request of the Social Security Administration.  (Id. at 310.)  Dr. Johnson noted a normal range of motion in Plaintiff's wrists, good grip strength, and only a minor limitation in dexterity.  (Id.)  Dr. Johnson thought Plaintiff's reported symptoms of numbness and sensitivity were exaggerated when compared to the normal physiological course of carpal tunnel syndrome.  (Id. at 311.)  He conceded that her USPS job might irritate her symptoms but noted that more suitable options for employment existed.  (Id.)

Dr. Thomas Chisholm, a medical consultant, reviewed Plaintiff's medical information on June 7, 2004, and concluded that she did not have a severe physical impairment.  (Id. at 313.)  Dr. Owen Nelson assessed Plaintiff's mental condition on July 8, 2004, and concluded there was no medically determinable impairment.  (Id. at 314.)

Plaintiff visited the SuperiorHealth Medical Group clinic on May 3, 2005, and reported no new symptoms, just variable achiness in her hand and wrist.  (Id. at 329.)  Plaintiff's doctor remarked that her symptoms were "fairly well controlled on Darvocet."  (Id.)

### D.     Evidence from the Vocational Expert

Vocational Expert Norman Mastbaum conducted a vocational analysis of Plaintiff and testified at the administrative hearing.  (Id. at 193, 416.)  The ALJ instructed the VE that Plaintiff was over fifty years of age, had more than a high school education, and had no difficulties with communication.  (Id. at 416-17.)  The ALJ then asked the VE to assume that Plaintiff was limited to light work, could lift no more than ten pounds occasionally, could type no more than twenty minutes in an eight hour day, and

could make only occasional repetitive motions with her wrists.  (Id. at 417.)  The VE concluded that

Plaintiff could not perform her past work as a data conversion operator, clerical generalist, or restaurant

server.  (Id. at 418.)  However, the VE opined that Plaintiff could work as a gate guard, of which there

are 3,000 jobs in the state; a checker of merchandise or freight, of which there are 2,000 jobs; and a

room service clerk, of which there are 4,200 jobs.  (Id. at 420-21.)  When the ALJ modified the

assumed limitations to include the ability to work for only forty-five minutes of every hour, the VE said

that employment would be precluded.  (Id. at 425.)

Plaintiff's attorney also questioned the VE at the hearing.  (Id. at 430.)  Specifically, he asked

the VE to compare the range of work for the jobs of gate guard, checker, and room service clerk, with

the full range of work available to a person who could do unskilled sedentary employment.  (Id.)  The

VE stated that the latter range of work was greater.  (Id.)  The ALJ interjected, calling the answer

"totally irrelevant."  (Id.)  Plaintiff's attorney argued to the ALJ that the testimony was relevant because

it showed Plaintiff was restricted to a range of work less than the range of work available to someone

who would be found disabled under the "grids."[1]  (Id. at 431.)

E.      The ALJ's Decision

As a threshold matter, the ALJ noted that Plaintiff met the insured status requirements for

entitlement to benefits from the alleged onset of disability date through the date of the decision.  (Id. at

15.)  The ALJ then engaged in the required five-step sequential evaluation: (1) whether the claimant is

---

[1] The "Medical/Vocational Guidelines" or "grids" are found at 20 C.F.R. § 404, Subpart P, Appendix 2.  These guidelines were promulgated to ensure uniform consideration of the various vocational factors (age, education, and work experience) in combination with a claimant's RFC.  20 C.F.R. § 404, Subpt. P, App. 2, § 200.

engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is capable of returning to work she has done in the past; and (5) whether the claimant can do other work that exists in significant numbers in the regional or national economy. See 20 C.F.R. § 404.1520(a)-(f).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 4, 2004. (Tr. at 15.) The ALJ also found that Plaintiff was severely impaired by bilateral carpal tunnel syndrome, status-post release surgery, but that her impairment did not meet or medically equal a listed impairment. (Id. at 15-16.)

Turning to step four, the ALJ found that Plaintiff was generally credible, but that her testimony did not support her claim that she was totally disabled. (Id. at 21.) The ALJ noted particularly that the objective medical evidence did not support disabling pain, disabling severity of condition, or significant loss in strength, sensation, or range of motion. (Id. at 17-18.) For example, recent medical records did not document any significant pain, weakness, numbness, or self-reports of hands falling asleep. (Id. at 18.) The ALJ gave controlling weight to Dr. Eckman's opinion of February 27, 2004, noting that Dr. Eckman thought Plaintiff could use her hands and perform light clerical duties as long as she avoided heavy and repetitive motions. (Id.) In addition, the ALJ recalled Dr. Eckman's opinion that Plaintiff could increase her working hours if she found a job that would reduce the stress on her hands and wrists. (Id.) The ALJ further recalled that Dr. Eckman did not restrict Plaintiff to working only forty-five minutes of an hour for every task; he suggested this limitation only for repetitive use of the hands. (Id.) Finally, the ALJ observed that Dr. Eckman's conclusions in 2002 preceded the alleged onset

9

date of March 4, 2004.  (Id. at 18-19.)

After weighing the objective medical evidence and Plaintiff's testimony, the ALJ determined

that Plaintiff had the RFC[2] to perform

> a range of light work, subject to lifting no more than ten pounds occasionally, that
> avoids use of vibrating tools with the hands, with no more than about twenty minutes of
> typing per eight hour day, with no more than occasional repetitive motions of the wrist
> that requires flexion, extension, pronation, or supination, though with no limit in use of
> the arms, but in use of the fingers, for example[,] she can occasionally grip a steering
> wheel, and with an unlimited ability in walking or standing.

(Id. at 21.)  Given this RFC, the ALJ concluded that Plaintiff could not perform her past relevant work,

but that she could perform other work existing in significant numbers in the regional economy.  (Id. at

20.)  In particular, Plaintiff could work in approximately 3,000 positions as a gate guard or merchant

patroller, in approximately 2,000 positions as a checker, and in approximately 4,200 positions as a

room service clerk.  (Id.)  Therefore, at the fifth step of the analysis, the ALJ found that Plaintiff was not

disabled within the meaning of the Social Security Act.

## II.     STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be

awarded.  "The Social Security program provides benefits to people who are aged, blind, or who suffer

from a physical or mental disability."  Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).

"Disability" under the Social Security Act is the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  The

---

[2] RFC is defined as the most that a claimant can do despite his or her limitations.  20 C.F.R.
§ 404.1545(a)(1).

claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).  The impairment must have lasted or be expected to last for a continuous period of at least twelve months, or be expected to result in death. Id. § 423(d)(1)(A).

### A.   Administrative Review

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision. 20 C.F.R. § 404.909(a)(1).  A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ. Id. § 404.929.  If the claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, although review is not automatic. Id. §§ 404.967-.982.  The decision of the Appeals Council, or of the ALJ if the request for review is denied, is final and binding upon the claimant unless the matter is appealed to a federal district court within sixty days after notice of the Appeals Council's action.  42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. § 404.981.

### B.   Judicial Review

Judicial review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence in the record as a whole. Hutsell v. Sullivan, 892 F.2d 747, 748-49 (8th Cir. 1989).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The review is "more than a mere search of the record for evidence supporting the [Commissioner's] finding." Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Rather, "'the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The reviewing court must review the record and consider:

1.  The credibility findings made by the ALJ.
2.  The plaintiff's vocational factors.
3.  The medical evidence from treating and consulting physicians.
4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5.  Any corroboration by third parties of the plaintiff's impairments.
6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989) (citing Brand, 623 F.2d at 527). A court may not reverse the Commissioner's decision simply because substantial evidence would support an opposite conclusion, Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984), and in reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact, Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). Instead, the court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm that decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

## III.    DISCUSSION

### A.    The ALJ's Consideration of Plaintiff's Age

Plaintiff argues that the ALJ failed to consider her age in determining whether she was disabled. However, Plaintiff's argument has no basis in the record.  The ALJ included Plaintiff's age in the question he posed to the VE, and the ALJ based his decision primarily on the resulting testimony of the VE.  The ALJ noted in his decision that Plaintiff was an individual "closely approaching advanced age," as defined by 20 C.F.R. § 404.1563.  Thus, the ALJ properly considered Plaintiff's age.

### B.    The ALJ's Consideration of Evidence from Plaintiff's Treating Physician

Plaintiff contends that the ALJ failed to give controlling weight to Dr. Eckman's opinions that she could only work four hours a day, perform sedentary work, and work for forty-five minutes of every hour.  Although Dr. Eckman did state these opinions during the course of Plaintiff's treatment, the opinions cannot be viewed in isolation, as Plaintiff urges.

In May 2001, Dr. Eckman recommended that Plaintiff continue to work twenty hours a week at her USPS job.  In November 2001, Dr. Eckman suggested that Plaintiff find another job that could better accommodate her restrictions.  Dr. Eckman noted a few weeks later that as long as Plaintiff continued to work at her USPS job, she should have a fifteen minute break every hour.  In 2002, Dr. Eckman remarked that Plaintiff would be able to increase her work hours if she would find a job with less wrist and hand stress.  Plaintiff did not visit Dr. Eckman after March 14, 2002.  In February 2004, almost two years later, yet still before the alleged onset of disability date, Dr. Eckman wrote that Plaintiff could type occasionally, and answer telephones, take messages, and perform other light clerical duties on a regular basis.  He emphasized that only heavy and repetitive activities would exacerbate her

13

symptoms.  He did not repeat his previous restrictions of part-time work and fifteen minute rest intervals, nor did he indicate that Plaintiff could perform only sedentary jobs.

The opinions expressed by Dr. Eckman in 2004 are consistent with the views of Dr. Johnson, the consultative examiner, and Plaintiff's subsequent doctor at SuperiorHealth Medical Group.  Dr. Johnson opined that Plaintiff's job at USPS exacerbated her symptoms, and he noted that there were more suitable jobs for Plaintiff.  In May 2005, Plaintiff's doctor noted that Plaintiff reported only variable achiness in her hand and wrist and that her symptoms were fairly well controlled with medication.

"A treating physician's opinion is generally entitled to substantial weight . . . ."  Kelley v. Callahan, 133 F.3d 583, 589 (1998).  Here, the Court finds that the ALJ gave controlling weight to Dr. Eckman's opinion—including the limitations Dr. Eckman placed on his own opinion.   Specifically, Dr. Eckman qualified his opinion by noting that Plaintiff would be able to increase her working hours if she would find work involving less hand and wrist stress.  The physical restrictions imposed by Dr. Eckman related solely to the nature of Plaintiff's job as a data conversion clerk at USPS.  Because Plaintiff, concededly, can no longer perform that job, Dr. Eckman's limitations no longer apply.  It was therefore appropriate for the ALJ to disregard that aspect of Dr. Eckman's opinion.

In addition, the Court notes that Plaintiff's onset of disability date was March 4, 2004.  Dr. Eckman's opinions in 2001 and 2002 consequently are less relevant than his February 2004 opinion, which is temporally closer to the alleged onset of disability date.  See Dobson v. Chater, 927 F. Supp. 1265, 1273 (D. Neb. 1996).  Dr. Eckman's opinion expressed in 2004 did not repeat the earlier restrictions on which Plaintiff relies, and the opinion was entirely consistent with the later opinions of Dr.

14

Johnson and Plaintiff's doctor at SuperiorHealth Medical Group.

Considering the chronology and context of Dr. Eckman's opinions, the Court finds that the ALJ did not err in rejecting the restrictions of working twenty hours a week, resting fifteen minutes every hour, and performing only work of a sedentary nature.

**C.  Whether the ALJ Properly Determined the Extent to Which Plaintiff's Impairments Eroded the Range of Work at the Light Exertional Level**

The ALJ decided Plaintiff's claim at step five of the sequential analysis.  After he determined that Plaintiff could not perform her past relevant work, he turned to the question of whether she could do other work existing in significant numbers in the regional or national economy.  The answer to this question was complicated by two findings: (1) Plaintiff's exertional limitations placed her between the sedentary and light exertional levels, and (2) she suffered from both exertional and nonexertional impairments.

Exertional impairments affect "the ability to perform physical labor."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  Nonexertional impairments include "handling, fingering, and feeling." Social Security Ruling (SSR) 96-9p (Soc. Sec. Admin. July 2, 1996).  If a claimant has only exertional impairments, the Commissioner may show that the claimant retained the requisite RFC by relying exclusively on the grids, "which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment."  Beckley, 152 F.3d at 1059 (citation omitted).  If a claimant has both exertional and nonexertional impairments, however, "the ALJ cannot rely exclusively on the grids to determine disability but must consider vocational expert testimony."  Id.; see also 20 C.F.R. § 404.1569a(d)

15

(instructing that when a person has a combination of exertional and nonexertional limitations, the grids should not be directly applied but merely considered as a framework to guide the ALJ's decision); SSR 83-14 (Soc. Sec. Admin. Feb. 26, 1979) (explaining "how to evaluate the vocational effects of nonexertional impairments within the context of the exertionally based table rules where claimants or beneficiaries also have severe exertional impairments that limit them to sedentary, light, or medium work."). In this case, the ALJ found that Plaintiff had both exertional and nonexertional impairments.

In addition to determining whether a claimant's impairments are exertional, nonexertional, or both, an ALJ must also determine at step five whether a claimant has the RFC to perform the full range of the appropriate exertional level of work: very heavy, heavy, medium, light, or sedentary. Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995). When an individual's RFC does not correspond with the definition of a certain range, "the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. . . . Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource." SSR 83-12 (Soc. Sec. Admin. Feb. 29, 1979). The ALJ determined in this case that Plaintiff's exertional limitations placed her between the sedentary and light levels. In particular, Plaintiff could not lift more than ten pounds, which was consistent with the sedentary level, but she could stand and walk, which was consistent with the light level.

Thus, Plaintiff was not able to be categorized under the grids for two reasons: because she had both exertional and nonexertional impairments, and because she was between the sedentary and light exertional ranges. Both reasons required the ALJ to obtain the testimony of a VE, which the ALJ did. The VE considered Plaintiff's exertional and nonexertional limitations and found three occupations at

the light exertional level in which Plaintiff could work: gate guard, merchandise or freight checker, and

room service clerk.  The VE testified that significant numbers of these jobs existed in the regional

economy.  The ALJ accepted the VE's conclusions and determined that Plaintiff was not disabled.

This process comports with the relevant regulations, case law, and social security rulings.

Plaintiff nevertheless contends that because she could not perform a <u>full</u> range of light work,

given the restriction on lifting, that the ALJ was required to find her disabled.[3]  This is not the standard.

The ALJ included the lifting restriction in his hypothetical to the VE, to which the VE responded that

significant numbers of jobs still existed.  The ALJ acknowledged in his decision that Plaintiff could not

perform a <u>full</u> range of light work; rather, she could perform

> <u>a</u> range of light work, subject to lifting no more than ten pounds occasionally, that
> avoids use of vibrating tools with the hands, with no more than about twenty minutes of
> typing per eight hour day, with no more than occasional repetitive motions of the wrist
> that requires flexion, extension, pronation, or supination.

(Tr. at 21.)  Thus, the ALJ limited the range of light work to reflect Plaintiff's restrictions, which is

entirely appropriate when "the evidence shows that the plaintiff can perform some, though not all, or the

exertional requirements of a particular range."  <u>Santiago v. Barnhart</u>, 367 F. Supp. 2d 728, 733 (E.D.

Pa. 2005) (citations omitted); <u>see also</u> <u>Talley v. Barnhart</u>, 113 F. App'x 185, 186-87 (8th Cir. 2004)

(finding that a claimant is not necessarily disabled merely because he can perform only a limited range of

---

[3] Plaintiff cites <u>Ramey v. Shalala</u>, 26 F.3d 58 (8th Cir. 1994), in support of her position.
However, <u>Ramey</u> is inapplicable to this case for several reasons.  First, the issue in <u>Ramey</u> was whether
the claimant could perform a full range of <u>sedentary</u> work.  <u>Id.</u> at 61.  Plaintiff's argument here, on the
other hand, is that she could not perform a full range of <u>light</u> work.  In addition, <u>Ramey</u> was decided
under SSR 91-3p, which relates to widow's benefits and thus is not applicable here.  <u>Id.</u>  Finally, the
claimant in <u>Ramey</u> was required to alternate sitting and standing, which was the specific impairment
underlying the disability finding.  <u>Id.</u>  Plaintiff does not have this restriction.

light work).  Plaintiff's inability to perform a full range of light work did not require the ALJ to find her

disabled.

Plaintiff also contends that the ALJ's limitation of the range of light work contravened SSR 83-

12.  This ruling explains how to use the grids when an individual with <u>only</u> exertional impairments has an

RFC that is either less or greater than the RFC of a specifically-defined exertional range of work.  <u>See</u>

SSR 83-12.  The ruling instructs that in such a case, the occupational base may be affected by losing or

gaining a significant number of jobs.  <u>Id.</u>  The term "occupational base" means:

> The number of occupations as represented by RFC, that an individual is capable of
> performing. These "base" occupations are unskilled in terms of complexity. The
> regulations take notice of approximately 2,500 medium, light, and sedentary
> occupations; 1,600 light and sedentary occupations; and 200 sedentary occupations.
> Each occupation represents numerous jobs in the national economy. (In individual
> situations, specific skilled or semi-skilled occupations may be added to the base.)

SSR 83-10 (Soc. Sec. Admin. Feb. 26, 1979) (parentheses in original).  When the extent of erosion to

an occupational base is not clear, the ALJ should consult a vocational resource.  SSR 83-12.

SSR 83-12 applies to claimants with only exertional impairments.  The stated purpose of the

ruling is "[t]o clarify policies applicable in using the numbered tables . . . for adjudicating claims in which

an individual has <u>only exertional limitations</u> . . . ."  SSR 83-12.  Here, Plaintiff has both exertional and

nonexertional impairments, and SSR 83-12 therefore is not directly applicable.  To the extent the ruling

would provide guidance to the ALJ, SSR 83-12 instructs that an ALJ should consult a vocational

resource in order to determine the extent of any erosion to an occupational base.  This is precisely what

the ALJ did in this case.  Indeed, SSR 83-12

> does not require the ALJ to determine whether a claimant's occupational base is more
> closely related to light or sedentary work capacity. Similarly, the Ruling cannot be

18

interpreted to suggest that a finding of inability to do the full range of light work requires a conclusion that a person is capable only of sedentary work.  Instead, it states that a significantly reduced exertional capacity "could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'"

Gravel v. Barnhart, 360 F. Supp. 2d 442, 447 (N.D.N.Y. 2005) (quoting SSR 83-12) (emphases in

Gravel).  "Thus, a fair reading of SSR 83-12 indicates that an ALJ can properly find a claimant capable

of performing a limited range of work in a given exertional category and then elicit VE testimony to

determine whether that claimant is disabled."  Id.

Here, the VE testified, in essence, that the light-work occupational base for Plaintiff was eroded

to three occupations: gate guard, merchandise or freight checker, and room service clerk.  A finding

that a plaintiff can perform only a limited number of light work occupations is fully consistent with SSR

83-12.  See Santiago, 367 F. Supp. 2d at 733.  Erosion of the occupational base does not

automatically mean that a significant number of jobs are no longer available.  See SSR 96-9p (The

"mere inability to perform substantially all sedentary unskilled occupations does not equate with a

finding of disability.  There may be . . . jobs that exist in significant numbers, that an individual may still

be able to perform even with a sedentary occupational base that has been eroded.").  Although Plaintiff

"had an RFC for less than the full range of light work, [] this did not mean she was limited to sedentary

work."  See Gravel, 360 F. Supp. 2d at 449.  Thus, even though Plaintiff's occupational base was

eroded, it nonetheless represented a significant number of jobs.

In conclusion, the ALJ properly obtained the assistance of a VE, as the grids did not direct a

conclusion in this case.  The ALJ considered Plaintiff's RFC, age, education, and work experience, and

specifically incorporated these factors into the hypothetical question posed to the VE.  Relying on the

VE's testimony, the ALJ properly determined that the range of work available to Plaintiff was not so restricted so as to mandate a finding that she was disabled.

### D.     Whether the ALJ Improperly Disregarded the VE's Testimony

Plaintiff argues that because she could not perform a full range of light work, she <u>must</u> fall within the unskilled sedentary classification of the grids, which directs a finding of disabled. Plaintiff bases her argument on certain hearing testimony from the VE in response to a question from Plaintiff's counsel. Plaintiff's attorney asked the VE to compare the range of work for the jobs of gate guard, merchandise or freight checker, and room service clerk, with the full range of work available to a person who could do unskilled sedentary employment. The VE testified that the latter range of work was greater. The ALJ characterized the testimony as irrelevant. Plaintiff now alleges that the ALJ erred in not accepting the testimony as proof that she is disabled.

Plaintiff's argument has been explicitly rejected in similar cases. In <u>Haynes v. Barnhart</u>, 416 F.3d 621 (7th Cir. 2005), the claimant had both exertional and nonexertional impairments, and he also fell between the light and sedentary exertion levels. <u>Id.</u> at 628. The claimant argued on appeal that because he could not perform a full range of light work, he necessarily fell within the sedentary classification of the grids, under which the ALJ should have found him disabled. <u>Id.</u> at 627. The court disagreed, explicitly rejecting the claimant's "all-or-nothing approach to the grids and the different exertional levels." <u>Id.</u> The court ultimately upheld the ALJ's decision to depart from the framework of the grids and rely instead on testimony from a VE. <u>Id.</u> at 629. In <u>Casey v. Barnhart</u>, the claimant's RFC fell between light and sedentary work. 76 F. App'x 908, 911 (10th Cir. 2003). The ALJ therefore consulted a VE, who determined that "the light-work occupational base would be eroded by

20

98%, but the full range of unskilled work would be available." Id.  Even though the VE testified that only two light-work jobs existed in significant numbers, this was not such an erosion of the occupational base so as to mandate a finding of disabled.  Id. (noting that the language of SSR 83-12 is permissive, not mandatory, in such a case); see also SSR 83-12 (explaining that an eroded occupational base "could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'") (emphasis added).

In the present case, the ALJ consulted a VE to assess Plaintiff's occupational base.  The VE testified that Plaintiff could perform substantial, gainful work in three light-work occupations.  The ALJ was entitled to rely on this testimony to find that Plaintiff was not disabled.  Correspondingly, the ALJ was entitled to reject the VE's testimony that the range of unskilled sedentary work was greater than the range of work for the jobs of gate guard, checker, and room service clerk.

**E.      The VE's Testimony that Work Exists in Significant Numbers for Plaintiff's RFC**

Plaintiff submits that the VE's testimony did not establish work existing in significant numbers within her RFC because the VE also testified that there was a greater range of work available to a person capable of doing unskilled sedentary employment.  The Court has already rejected this argument.  The VE testified that Plaintiff could work in three light-work occupations, for which there are more than 9,000 jobs.  The existence of more jobs at the sedentary level does not affect the finding that a significant number of jobs existed for Plaintiff.

Plaintiff also asserts that because she is older than fifty, the range of work available to her is less than the range of work available to a person who could work the full range of unskilled sedentary jobs.

21

As previously noted, the VE accounted for Plaintiff's age in recommending the jobs of gate guard, checker, and room service clerk.  Thus, the mere fact that her range of work is less than the range of work for younger individuals does not automatically mean she is disabled.

Finally, Plaintiff characterizes the VE's testimony as ambiguous.  In addition to the gate guard, checker, and room service clerk positions, the VE considered whether Plaintiff could work as a parking lot cashier or machine tender.  Ultimately, the VE did not recommend those occupations because those jobs are "the kinds of work that would either fall within [the hypothetical question] or come close to it and that would, I think, require some additional inspection."  (Tr. at 424.)  Plaintiff misconstrues this testimony as also applying to the gate guard, checker, and room service clerk positions, but the transcript of the testimony is clear that the VE did not qualify the recommended jobs in any way.  Further, the ALJ did not find that Plaintiff could work as a parking lot cashier or machine tender.

In conclusion, the Court finds all of Plaintiff's challenges to the VE's testimony without merit.  Thus, the VE's testimony constituted substantial evidence to support the ALJ's decision.

**IV.     RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 8) be **DENIED**; and

      2.       Defendant's Motion for Summary Judgment (Doc. No. 12) be **GRANTED**.

Dated:  June 27, 2007

                                   s/ Susan Richard Nelson
                                 SUSAN RICHARD NELSON
                                 United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by July 13, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.